**Order issued January 12, 2016**



In The

# Court of Appeals

### For The

# First District of Texas

_____

## NO. 01-14-00366-CR

_____

**CHRISTOPHER DEWA WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1259853**

---

# MEMORANDUM ORDER OF ABATEMENT[1]

A jury convicted appellant, Christopher Dewa Washington,[2] of capital

murder and the trial court assessed punishment at confinement for life with no

---

[1]  The State of Texas has filed a motion for rehearing of our November 19, 2015 order of abatement. We deny the motion for rehearing, withdraw our order, and issue this order in its place.

possibility of parole. In three issues, appellant argues that (1) the trial court violated his constitutionally protected right to due process when it refused to allow him to obtain the assistance of a psychological expert, (2) the trial court abused its discretion when it denied appellant's request for an evidentiary hearing on his motion for new trial, and (3) the trial court abused its discretion when it denied appellant's request for a competency hearing under Texas Code of Criminal Procedure 46B. We abate this appeal and remand for further proceedings.

## Background

### A. The Offense

The facts of the offense are largely undisputed.

Robert "Flaco" Castillo, Flaco's brother, Francisco "Junior" Castillo, and appellant were driving in North Houston in the late night hours of April 18, 2010, in Flaco's dark sedan, when the trio spotted a white Cadillac with expensive rims and a loud sound system driven by the complainant, David Rodriguez. Flaco decided to rob Rodriguez, and appellant and Junior agreed to participate in the robbery. When Rodriguez's car came to a stop, Flaco forced his way into the Cadillac and drove off with Rodriguez. Junior and appellant followed the Cadillac in Flaco's car.

---

[2]    Although the record reflects that appellant's middle name is "Dewayne," the final judgment identifies appellant as "Christopher Dewa Washington."

Appellant later told police detectives that, after parking the Cadillac in a secluded spot on the side of a roadway, Flaco made Rodriguez lay on the ground while appellant and Junior stole the speakers from Rodriguez's trunk. According to appellant, Flaco then shot Rodriguez for no good reason.

Unbeknownst to the trio, passersby had spotted the two vehicles parked on the side of the roadway and reported the suspicious activity to police. On her way to the scene, a Harris County Sheriff's deputy spotted two vehicles matching the caller's description running a stop sign. The deputy chased two men in the white Cadillac and eventually apprehended the driver, appellant, and arrested him for evading arrest in a motor vehicle.[3]

The next day, Rodriguez's body was discovered at the site where the two vehicles had originally been spotted. After police detectives connected the white Cadillac that appellant had been driving to Rodriguez's body, the detectives questioned appellant, who was still in jail on his evading-arrest charge. Although he initially denied any knowledge of the dead body, appellant eventually told police that Rodriguez had been killed as a result of a carjacking in which appellant had participated.

---

[3] The passenger in the Cadillac, Flaco, escaped, but was eventually arrested for Rodriguez's murder. Flaco was tried separately, convicted of capital murder, and sentenced to life in prison without parole. A panel of this court affirmed the conviction. *See Castillo v. State*, No. 01–12–00961–CR, 2014 WL 1004398 (Tex. App.—Houston [1st Dist.] Mar. 13, 2014, pet. ref'd) (mem. op.).

3

**B. Appellant's Trial**

On the first day of appellant's capital murder trial, appellant's counsel, Patrick McCann, filed a handwritten "Motion for Intellectual Disability and Competency Evaluation" and presented it to the visiting judge presiding over the trial, the Honorable Mike Wilkinson. McCann explained to the court that the defense had just learned of appellant's "potential intellectual disability" and that he had four witnesses who were present and able to testify regarding that issue.

Appellant's family and friends testified that appellant was hit by a car when he was between the ages of four and six, and that he was hospitalized for a couple of days for a head injury he received during the accident. They explained that appellant had always been considered slow or "slower than others," and that he is easily confused, "[h]as trouble with everyday tasks," and requires help or supervision with daily living skills. According to his friends and family, appellant, who was almost 40 years old at the time of trial, had lived with his mother prior to his arrest because he was unable to live independently. Appellant did not graduate from high school; he has difficulty reading, writing, and performing simple arithmetic. His family and friends also testified that appellant has "problems with his memory," and when he tries to remember events, he is always "off on time." According to appellant's father, appellant is child-like "in his thinking," is "easy to be influenced," and "can't think down the road."

4

After hearing testimony from the witnesses and the arguments of counsel, Judge Wilkinson stated: "Okay. We have now had our inquiry, and I don't see that there's evidence to support a finding of incompetency. And I—I've not determined that there's any evidence to support a finding of incompetency at this time. If something later comes up, you know, I could always order an evaluation."

The next day, McCann re-urged his "sworn motion of continuance and the request for an evaluation for intellectual disability" to a second visiting judge, the Honorable Wayne Mallia. McCann explained to Judge Mallia why the defense needed the evaluation before proceeding with either the motion to suppress or the trial on the merits:

> [I]t has become increasingly obvious that [appellant] is much slower than we had initially thought. Not simply uneducated, or, perhaps, not sophisticated, but it does appear to be getting worse under the stress of trial . . . . I wanted to put this on the record so that the Court has both an indication of how he's actually functioning, and again re-urge, before we go into the motion to suppress, that the Court grant a motion for continuance and simply have him evaluated. I believe that I can get such a test done within a few days. And there is a neuropsychologist that I am familiar with who is very competent and has extensive experience with intellectual disability and has done forensic work. And I believe that I can get her office to do this within the next few days.

McCann noted that appellant's potential intellectual disability "may have harmed [his defense] during voir dire since [appellant] had no real participation in that whatsoever." McCann concluded by stating:

5

> I'm not asking for anything other than a brief continuance to get this exam done so if this is true, that we then have a defense. If it is not, then we go forward, I think, as we should. And I'm happy to do that. I don't think it's going to make a difference to the dispensing of justice if we take a short break to get this done. And I believe I can get it done. If nothing else, the IQ testing can be done, and I can get the raw scores back to the Court as—rather than a finished report and, if necessary, have the expert come in and testify.

After meeting with counsel in chambers, Judge Mallia announced that he was "denying the defense's motion for continuance." The court then proceeded to hear the defense's motion to suppress appellant's statement to police.

After the court denied the motion to suppress, appellant asked permission to offer testimony from one more witness, appellant's cousin. Appellant's cousin testified that although appellant's family had always known that he was "slow," they kept that fact from defense counsel until the day of trial. She also explained that appellant will pretend that he understands things when he does not, and that he will "do whatever he thinks you want done [when he is] under pressure." At the conclusion of the testimony, McCann, argued:

> I would ask that the Court reconsider its ruling on the motion to suppress. And I would, again, reoffer the motion for continuance and testing so that Mr. Washington may be evaluated. During the break, my co-counsel and I took advantage of the time to contact the neuropsychologist I had mentioned earlier, and she has indicated she's willing, over the next two days, to perform the evaluation, should the Court wish to do so.

Judge Mallia denied "the motion for continuance" and the "motion to suppress" and the trial proceeded.

During a recess in trial the following day, McCann informed the court that the defense had filed a "motion for a competency trial" supported by an affidavit from appellant's other counsel of record, Alberto Salceda. McCann also informed the court that the neuropsychologist, Dr. Shawanda Anderson, was still available to evaluate appellant.

In his affidavit, Salceda testified that when he and McCann questioned appellant regarding several facts relating to appellant's arrest, including gaps in counsel's timeline of events, appellant always said that the elapsed time between events was "ten minutes." When pressed about his answers, appellant could not explain why he claimed that "ten minutes" elapsed between every set of events he was questioned about.

Salceda also testified that, on the first day of trial, McCann explained to appellant that they would not call appellant's family to testify during the guilt/innocence phase of trial and if there were a punishment phase in this case, they would reconsider which witnesses to present. Appellant responded, "ok." After McCann left the room, Salceda discussed the upcoming voir dire proceeding and explained that he wanted appellant's input on certain things. Appellant's only response was, "ok." When Salceda asked if appellant had any questions for him, appellant asked whether his parents would testify about his work history. Salceda repeated the explanation that McCann had previously offered, and appellant

7

replied, "ok." Salceda also averred that appellant had been unable to assist them in resolving some discrepancies in the timeline they had been working on as part of appellant's defense because appellant could not determine the sum of 30 and 25 minutes, and he believed that 55 minutes after 8:00 was 9:30.

Salcedo also stated that appellant's "only participation [in voir dire] was to ask three separate times whether the jury would assess punishment even after it had been explained by [Salceda and] McCann on two separate occasions." According to Salceda, appellant's handwritten notes from voir dire were "incomprehensible" and appellant "never expressed an opinion about individual panel members even though [his attorneys] had explained to him what [they] were doing and how [they] were going about it."

Salceda further averred that when he and McCann discussed appellant's intelligence with appellant's family members on the day of trial, the family, for the first time, "gave [trial counsel] information regarding [appellant's] childhood traumatic brain injury" and said that appellant had been considered "slow" since childhood, he needed supervision for even the simplest tasks, and he could not live independently. After reading Salceda's affidavit, Judge Mallia denied appellant's "motion for contested competency and motion for continuance."

The jury convicted appellant of capital murder and, because the State was not seeking the death penalty, the court assessed appellant's punishment at life in

prison without parole. Appellant filed a motion for new trial and requested an evidentiary hearing on the motion. The trial court denied the motion without holding a hearing.

This appeal followed.

## Denial of Competency Hearing

In his third issue, appellant argues that the trial court abused its discretion when it denied his request for a competency hearing under Texas Code of Criminal Procedure 46B.

The State argues that the trial court was not required to hold a hearing because appellant did not present any evidence that he did not understand the nature of the proceedings or that he was incapable of assisting with his own defense.

## A.     Standard of Review and Applicable Law

We review a trial court's decision not to conduct a competency hearing under an abuse of discretion standard. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). An accused is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). A person is incompetent to stand trial if he lacks (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational, as well as factual, understanding

of the proceedings against him. *Id.* art. 46B.003(a); *Luna v. State*, 268 S.W.3d 594, 598–99 (Tex. Crim. App. 2008), *cert. denied*, 130 S. Ct. 72 (2009).

"On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) (West 2011). If, after making an informal inquiry, the court finds that evidence exists to support a finding of incompetency, the court is required to "order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case" and "hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits." *Id.* art. 46B.005(a), (b). In reviewing the trial court's decision regarding whether to order a formal competency trial, we consider only that evidence tending to show incompetence, "'putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency.'" *Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013) (quoting *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. 1980) (plurality opinion)).

**B.      Analysis**

Here, the record reflects that the trial court held an informal inquiry into appellant's competency on the first day of trial. After hearing testimony from numerous witnesses about appellant's traumatic childhood head injury, appellant's inability to live on his own without assistance, his inability to master routine daily living skills and his dependence on family for help with day-to-day tasks, appellant's memory problems, particularly with regard to the timing of events, and the fact that appellant has generally been regarded as "slow" since he was a child, the trial court found that there was no "evidence to support a finding of incompetency at [that] time." The defense subsequently presented the testimony of appellant's cousin who testified that appellant pretends that he understands things when he does not, and that appellant will "do whatever he thinks you want done [when he is] under pressure."

Additional evidence of appellant's possible incompetency was presented in trial counsel's affidavit. In the affidavit attached to appellant's motion for a competency trial, Salceda averred, among other things, that he was unable to meaningfully consult with appellant regarding the facts of the case and trial proceedings because, with one exception, whenever he asked appellant a question, appellant's only response was, "ok." Salceda further testified that appellant had been unable to help him and his co-counsel resolve discrepancies in the defense's

11

timeline of events associated with the offense and appellant's arrest because appellant could not perform simple arithmetic, and when he was asked about lapses of time between events he always answered "ten minutes." Salcedo also provided testimony illustrating appellant's inability to meaningfully consult with his counsel regarding voir dire, and appellant's lack of participation in that phase of trial.

After reviewing the record and considering only evidence tending to show incompetency, and putting aside competing indications of competency, we conclude that there is more than a scintilla of evidence in the record that would support a finding that appellant *may* be incompetent to stand trial. *See Turner*, 422 S.W.3d at 692 (noting that "some evidence" a defendant may be incompetent is, for purposes of article 46B.004(c), "a quantity more than none or a scintilla"). Accordingly, we hold that the trial court abused its discretion when it found that there was no evidence that would support a possible finding that appellant was incompetent to stand trial, and refused to hold a formal competency trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) (West 2011).

We sustain appellant's third issue.[4]

## Conclusion

Having sustained appellant's third issue, we abate this appeal and remand this cause to the trial court to determine whether it is feasible to conduct a

---

[4] In light of our resolution of this issue, we need not address appellant's remaining issues at this time.

retrospective competency trial, and if so, to order an examination of appellant under Subchapter B and conduct a retrospective competency trial, as required by Article 46B.005. *Id.* at art. 46B.005(a), (b); *see Turner*, 422 S.W.3d at 696–97. Regardless of whether the trial court deems a retrospective competency trial to be feasible, the record of the proceedings on remand shall then be returned to this Court for reinstatement of the appeal. *Turner*, 422 S.W.3d at 696–97.

Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish.   Tex. R. App. P. 47.2(b).

13